## CIRCUIT COURT OF THE CITY OF CHESAPEAKE

Allstate Development Co. et al.

v.

City of Chesapeake

July 15, 1988

Case No. (Chancery) 23657

By JUDGE E. EVERETT BAGNELL

The City of Chesapeake in 1986 adopted an amendment to its zoning ordinance that a conditional use permit be obtained prior to building permits being issued for modular housing units in any zoning district in the City. Stick built houses are not required to obtain a conditional use permit prior to obtaining a building permit. The City's ordinance was adopted by Council against the advice of the City Attorney.

There is a presumption that the City's enactment of the zoning ordinance is a valid exercise of the City's police power. The City has indicated that the purpose of the ordinance was to insure that the modular homes did not reduce value on surrounding homes and that they were aesthetically compatible with the surrounding area. Also, the City indicated that a concern was that modular homes are lower cost homes and will lead to a building boom and uncontrollable growth in the City.

The ordinance was enacted by the City because of complaints primarily in a subdivision known as Mount Pleasant Heights. Citizens expressed concerns and testified that, for various reasons, they did not like the modular homes being placed in their neighborhood, but, in the final analysis, the complaint was that they did not like the appearance of the homes. Some of the things about

which they complained were: the ceilings were too low, had painted trim, the roof line, and the house did not have window sills. A stick built house could have been constructed in the same neighborhood, with the same 7-1/2 foot ceilings, the same roof line and no window sills, and not been subject to challenge. At trial, there was no evidence introduced by the City that the existence of modular units had any effect whatsoever on the value of adjoining housing. Prior to the adoption of the ordinance, no studies were made by the City to indicate that there would be an economic impact on existing housing. The concerns of the Council were that the people did not like modular homes; that, because much of the industry in Chesapeake is building homes, they were a threat to the economic base. The City Assessor in assessing real estate in the City of Chesapeake does not consider whether the house is modular or stick built. The City Assessor also testified that no investigation or report had ever been prepared by the City regarding the impact of modulars on property value.

Because modular homes meet all requirements of the building code and are inspected in the factory, they are not subject to inspection on the site. The local building official, however, does have the right and duty to insure that the units are not damaged upon delivery; that they are placed on a proper foundation; that they are properly assembled, and that they are properly connected to utilities. These homes are, in all respects, subject to the same construction standards used in stick built homes and, therefore, no health or safety basis for a zoning ordinance to single out or differentiate modular homes exists. The use permit procedure devised by the City in its ordinance concerned whether or not the modular would "fit" into the neighborhood. Unless the subdivision had subdivision restrictions, a stick built house would not be required to "fit" into the neighborhood, so long as it met building codes.

With regard to local regulation of modular homes, the Attorney General, in her letter of March 28, 1986, to The Honorable A. L. Philpott, indicated that:

> The validity of modular home zoning restrictions, therefore, would be based on whether the restric-

tions serve the general welfare of the community and are reasonably related to such other legitimate police power factors as the characteristics of modular homes, the impact of such homes on the surrounding area, and aesthetics. Depending on the evidence available to support these various factors, a locality might reasonably find that modular homes differ sufficiently from site-built homes to be treated differently from site-built homes for zoning purposes.

The credible evidence clearly indicates that the sole justification for the ordinance was aesthetics and, therefore, cannot stand. Since the ordinance bears no substantial relationship to the police power interest of the City, I declare the same to be void and order the City to be permanently enjoined from its enforcement.